FILED
2021 Jan-29  PM 04:09
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **MARIA VALENCIA-TORRES, on behalf of herself and all others similarly situated,** | ) ) ) ) |
| **Plaintiff,** | ) ) |
| **v.** | ) **CASE NO. 2:20-cv-01651-RDP** |
| | ) |
| **GOOGLE, LLC and GOOGLE PAYMENT CORP.,** | ) ) ) |
| **Defendants.** | ) |

## <u>DEFENDANTS' MOTION TO DISMISS</u>

James P. Pewitt
JAMES P. PEWITT, LLC
Two North Twentieth
2 20th Street North, Suite 925
Birmingham, Alabama  35203
Office:  (205) 874-6686
Cell:  (205) 612-1140
jim@jamespewitt.com

Teresa H. Michaud
Bradford K. Newman
Alexander G. Davis
BAKER MCKENZIE
10250 Constellation Blvd, Suite 1850
Los Angeles, California  90067
teresa.michaud@bakermckenzie.com
bradford.newman@bakermckenzie.com
alexander.davis@bakermckenzie.com

(*pro hac vice* admission to be obtained)

## Table of Contents

I.    Introduction ........................................................................................3

II.   Plaintiff's Factual Allegations Against Google....................................6

III.  Legal Standard....................................................................................8

IV.   Argument ..........................................................................................10

      A. Section 230 Protects Google from State Law Liability for the
         Third-Party Content It Hosts on the Google Play Platform ........10

         1. *Google Play is an "interactive computer service" that provides a*
            *platform for video games created by third-party "information*
            *content providers."*......................................................................11

         2. *Plaintiff's attempts to plead around Section 230 fail and cannot be*
            *remedied.* ...................................................................................13

      B. Plaintiff's Loss Recovery Claim Fails ...........................................17

         1. *Transaction #1: Plaintiff's free download of Slotomania* ..............18

         2. *Transaction #2: Plaintiff's purchase of virtual "coins" from*
            *Slotomania through Google's payment processing service* ...........19

         3. *Transaction #3: Plaintiff's delivery of virtual coins to Slotomania to*
            *play virtual slot machine games service* ........................................21

V.    Conclusion.........................................................................................22

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants, Google, LLC, and Google Payment Corp., move the Court to dismiss with prejudice the claims asserted in this Complaint.

## I.    <u>Introduction</u>

Plaintiff Maria Valencia-Torres has invoked Alabama's loss recovery statute, Ala. Code § 8-1-150, based on her experience playing a videogame application (or "app") called "Slotomania."  Yet in her lawsuit she has sued two internet platform defendants—Google, LLC and Google Payment Corp. (collectively, "Google")— that did not create or develop Slotomania; never received anything from Plaintiff "upon any game or wager," as the statute requires; and are protected from liability under Section 230 of the federal Communications Decency Act ("Section 230"). The Court should therefore dismiss the Complaint under Rule 12(b)(6).

Plaintiff takes issue with the *content* of Slotomania, alleging that the app's simulated slot machine gameplay constitutes illegal gambling under Alabama law. Plaintiff does not allege that Google had any role in creating or developing any aspect of the Slotomania videogame, nor could she; this game, like all of the others mentioned in the Complaint, is developed, updated, and managed entirely by third parties.  Instead, Plaintiff is clear that Google's involvement is limited to two activities: (i) providing an online platform—called the Google Play Store—from which Plaintiff could simply *download* Slotomania onto her mobile phone or tablet;

3

and (ii) providing a content neutral service for processing transactions between Plaintiff and Slotomania. These are the precise circumstances under which Section 230 shields Google from state law liability: the statute's "plain language . . . creates federal immunity to any cause of action that would make internet service providers liable for information originating with a third-party user of the service." *Am. Income Life Ins. Co. v. Google, Inc.*, No. 2:11-cv-04126-JEO, 2012 U.S. Dist. LEXIS 190487, at *5 (N.D. Ala. May 23, 2012) (citing *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006)). Because Plaintiff has not, and cannot, allege that Google created or developed the content at issue, but instead simply made that third-party content available for download through its online platform, the Court must dismiss the Complaint on Section 230 grounds. *See, e.g.*, *Doe v. MySpace Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) ("Congress provided broad immunity under the CDA [Section 230] to Web-based service providers for *all claims stemming from their publication of information created by third parties* . . .") (emphasis added).

In addition, Plaintiff has no loss recovery claim against Google in the first place. Alabama's loss recovery statute has a limited scope: it permits recovery only for money or a "thing of value lost *upon any game or wager*" and actually delivered to the defendant. *See* Ala. Code § 8-1-150 (emphasis added). Plaintiff's Complaint identifies three separate and discrete transactions: 1) downloading Slotomania for free from the Google Play Store; 2) purchasing a specific amount of virtual "coins"

for a set amount of money using Google's payment processing services; and 3) wagering those virtual coins with the owners of Slotomania for the chance to win more virtual coins.  None of these three activities could ever satisfy the statutory requirements for a loss recovery action against Google under Alabama law.

In the *first* transaction, for which Plaintiff does not appear to seek recovery, she downloaded Slotomania from the Google Play Store for free, and therefore parted with no "money" or "thing[s] of value" at all.

In the *second* transaction, Plaintiff alleges that Google performed only a payment processing service for a transaction between Plaintiff and Slotomania to purchase virtual "coins."  This is a simple currency exchange, made on certain terms, and so involves no "game or wager," or any chance-based element, as the statute requires.  Plaintiff received exactly as many virtual coins as were promised, and suffered no "los[s]."  Her claim to recover these "in-app purchases" from Google (Compl. ¶ 33) therefore fails at the outset.  Importantly, any interactions between Plaintiff and Google ceased entirely after this currency exchange was complete.  *See Brown v. Mastercard Int'l, Inc. (In re Mastercard Int'l, Inc. Internet Gambling Litig.)*, Nos. 00-MD-1321, 00-MD-1322, 00-0657, 2004 U.S. Dist. LEXIS 3056 (E.D. La. Feb. 18, 2004) (dismissing with prejudice Alabama loss recovery claim against a credit card issuer whom the plaintiff claimed had processed purchases of

"credits" that were *subsequently* used to engage in online gambling with third parties).

As for the *third* transaction—which took place exclusively between Plaintiff and a third-party mobile app developer—Plaintiff appears to be attempting to recover from Google the *value* of virtual "coins" that she delivered to the creators of Slotomania "for a chance to win [more] free coins that would enable her to enjoy the game for a longer period of time." *See* Compl. ¶ 13.  This third-party transaction cannot support a loss recovery claim against Google, because Google never received these virtual coins, and Plaintiff does not allege otherwise.  A defendant may be liable only for the valuable things it *actually received* from the plaintiff through an illegal game or wager; there is no joint and several liability under Section 8-1-150. *See Motlow v. Johnson*, 145 Ala. 373, 376 (1905).  Because Plaintiff did not deliver *anything at all* to Google "upon a game or wager," and therefore suffered no loss to Google, her loss recovery claim is fatally defective, and must be dismissed.

For these reasons, as described more fully below, the Court should dismiss Plaintiffs' Complaint in its entirety, and with prejudice.

## II.   **Plaintiff's Factual Allegations Against Google**

Plaintiff alleges she downloaded an app called "Slotomania" at some point prior to December 26, 2019.  Compl. ¶ 11.  Plaintiff does not allege that Google developed or created Slotomania; instead, Plaintiff alleges that Google manages a

platform called the Google Play Store from which Plaintiff downloaded the Slotomania game. *Id.* ¶¶ 9-10.

Slotomania is free to download. *Id.* ¶ 7. According to Plaintiff's allegations, Slotomania offers a virtual gameplay experience that mimics many features of a physical slot machine game. *Id.* ¶¶ 10-11. Plaintiff initially received an allotment of free virtual currency—known as virtual "coins"—to play Slotomania. *See id.* ¶ 10.

Thereafter, Slotomania—not Google—offered Plaintiff the option to engage in a discrete, non-chance-based transaction: to purchase more virtual "coins through the app[.]" *Id.* ¶ 11. Google processes such purchases of virtual coins through a neutral payment tool available to all app developers who post content to the Google Play Store, and takes a fee for such services. *See id.* ¶¶ 7-8. As Plaintiff's Complaint makes clear, Google's role in this regard is limited to providing a "payment interface" service. *Id.* ¶ 7. In the six months prior to October 21, 2020, Plaintiff alleges she paid $166.62 and in exchange received the equivalent in virtual coins. *Id.* ¶ 11.

Plaintiff also alleges she engaged in a second, subsequent transaction with Slotomania *after* completing her virtual coin purchase processed by Google. Specifically, she claims she bet virtual coins in Slotomania "for a chance to win free coins that would enable her to enjoy the game for a longer period of time." *Id.* ¶ 11.

Because Google's involvement with Plaintiff ended completely after processing the virtual currency purchase, Google played no part in Plaintiff's subsequent virtual slot machine gameplay, which took place exclusively in the Slotomania app. Plaintiff alleges no facts to the contrary.

Plaintiff has now asserted a single cause of action under Alabama's loss recovery statute, Ala. Code § 8-1-150, to recover "all sums paid through in-app purchases" for Slotomania. *Id.* ¶ 35.

## III.   <u>Legal Standard</u>

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the nonmoving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller*, *Canfield*, *Paddock & Stone*, *PLC*, 413 F. Appx. 136, 138 (11th Cir. 2011) (unpublished) (quoting *Am. Dental Assn. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

## IV.   <u>Argument</u>

### A.   **Section 230 Protects Google from State Law Liability for the Third-Party Content It Hosts on the Google Play Platform**

Plaintiff's loss recovery claim against Google arising from the content of third-party video games available on its Google Play platform is barred by Section 230 of the Communications Decency Act ("CDA").  Section 230(c)(1) protects from liability (1) a provider or user of an interactive computer service, (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider.  *Am. Income Life Ins. Co. v. Google, Inc.*, No. 2:11-cv-04126-JEO, 2012 U.S. Dist. LEXIS 190487, at *6 (N.D. Ala. May 23, 2012) (citing *Universal Commn'cn Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 418 (1st Cir. 2007)).

Here, because the Complaint's allegations confirm that Google satisfies the requirements for Section 230 immunity, the Court may make this determination at the pleadings stage.  *See, e.g.*, *Shuler v. Duke*, 2018 U.S. Dist. LEXIS 90409, at *5 (N.D. Ala. May 31, 2018) ("[A] district court may dismiss a complaint pursuant to Rule 12(b)(6) based on any affirmative defense where the allegations of the pleading, on their face, show that the defense bars recovery.") (citing *Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008)); *Am. Income*, 2012 U.S. Dist. LEXIS 190487, at *5-12 (N.D. Ala. May 23, 2012) (granting motion to dismiss in favor of Google, Inc. on Section 230 grounds).

1.   *Google Play is an "interactive computer service" that provides a platform for video games created by third-party "information content providers."*

There can be no serious dispute that Google qualifies as "interactive computer service." Section 230 defines "interactive computer service" as an "information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet . . . ." *See* 47 U.S.C. § 230(f)(2). Courts have found Google to satisfy the statutory definition, seemingly without exception. *See, e.g.*, *Dowbenko v. Google Inc.*, 582 F. App'x 801, 805 (11th Cir. 2014) ("It is uncontested that Google is an interactive computer service provider . . . ."); *Am. Income Life Ins. Co. v. Google, Inc.*, No. 2:11-cv-04126-JEO, 2012 U.S. Dist. LEXIS 190487, at *7 (N.D. Ala. May 23, 2012) ("Google is merely an interactive computer service . . . ."); *E-Ventures Worldwide, LLC v. Google, Inc.*, 188 F. Supp. 3d 1265, 1273 (M.D. Fla. 2016) ("It is not disputed that Google is, as courts across the country have agreed, a provider of an interactive computer service."); *see also Diez v. Google, Inc.*, 831 F. App'x 723 (5th Cir. 2020) (unpublished per curiam) ("Google is merely an interactive computer service provider as opposed to an information content provider."); *Takhvar v. Page*, No. 2:17-cv-00673-JRG-RSP, 2018 U.S. Dist. LEXIS 37290, at *4 (E.D. Tex. Feb. 25, 2018) (holding that plaintiff's claims were "barred by [Section 230] which provides *internet service*

*providers, such as Google*, with broad immunity from content-based claims originating from third parties) (emphasis added); *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1196 (N.D. Cal. 2009); *Gavra v. Google, Inc.*, No. 5:12-CV-06547-PSG, 2013 WL 3788241 at *3 (N.D. Cal. July 17, 2013); *Black v. Google, Inc.*, 457 Fed. App'x 622, 623 (9th Cir. 2011).

The same result follows here. Plaintiff concedes that Google's Play Store is a platform where "millions of software developers make applications for the Android O[perating] S[ystem] . . . available." Compl. ¶ 7. The Play Store, like Google's other platforms, therefore satisfies the definition of an "interactive computer service."

Conversely, while the third-party developers who created the 200 videogames referenced in the Complaint are classic "information *content* provider[s]" under the CDA, Google itself does *not* meet that definition. An information content provider is limited to "any person or entity that is responsible, in whole or in part, for the *creation or development of information* provided through the Internet or any other interactive computer service." *Dowbenko*, 582 F. App'x at 804 (quoting 47 U.S.C. § 230(f)(3)) (emphasis added). Plaintiff nowhere alleges that Google had any involvement in developing the *content* of Slotomania (nor could she). Instead, Google simply "makes available" this videogame, created by third-party software developers, in its Google Play Store. *See* Compl. ¶ 6. Plaintiff herself characterizes

this conduct as "distribution," not content creation. *Id.* This admission effectively precludes any inference that Google is responsible for the content of the videogame with which Plaintiff now takes issue. *See, e.g.*, *Roca Labs, Inc. v. Consumer Op. Corp.*, 140 F. Supp. 3d 1311, 1321 (M.D. Fla. 2015) (concluding that "distributing [information] via Twitter . . . do[es] not substantively alter the content" and so "Section 230 immunity applies"); *see also Zeran v. Am. Online, Inc.*, 129 F.3d 327, 334 (4th Cir. 1997) (concluding that Congress intended distributors to be included within the term "publisher" under Section 230).

Accordingly, Section 230 protects Google from liability for Plaintiff's single state law cause of action, because her claim fundamentally seeks to put Google in the shoes of the Slotomania's third-party developers for purposes of the loss recovery statute. Stated another way, Plaintiff's claim depends upon treating Google as the *publisher* of third-party content, which is exactly what Section 230 forbids. *See Roca Labs*, 140 F. Supp. 3d at 1323 (finding state law causes of action "preempted because they treat the defendant as the publisher or speaker, which is proscribed by Section 230").

2. *Plaintiff's attempts to plead around Section 230 fail and cannot be remedied.*

The Complaint's allegations confirm that Google is an interactive computer service but not an information content provider, and that Plaintiff seeks to hold Google liable because of third-party content made available on the Google Play

platform.  Under these circumstances, Section 230 applies: "The majority of federal circuits have interpreted the CDA to establish broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.'" *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006) (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)); *Am. Income*, 2012 U.S. Dist. LEXIS 190487, at *6-7 (N.D. Ala. May 23, 2012) ("[U]nder the CDA, an 'interactive computer service' qualifies for immunity so long as it does not also function as an 'information content provider' for the portion of the statement or publication at issue.") (quoting *Carafano v. Metrosplash.com. Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003) (internal quotations and emphasis omitted).  Even close cases—*unlike* this one—"must be resolved in favor of immunity, lest [courts] cut the heart out of section 230 by forcing websites to face death by ten thousand duck-bites, fighting off claims that they promoted or encouraged--or at least tacitly assented to--the illegality of third parties." *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1174 (9th Cir. 2008).

Plaintiff alleges no facts that would undermine these fundamental principles in any way.  She notes that Google, like any other mature interactive computer service, maintains and enforces standards regarding content posted to the Google Play platform, including limiting access to certain apps based on age or geography. *See* Compl. ¶ 14.  Exercising such discretion does not waive Section 230 protections,

because it does not involve any content *creation*, but rather traditional "editorial functions" about how and whether to publish the content of third parties.  *See, e.g.*, *Dowbenko,* 582 F. App'x at 805 ("[L]awsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content-are barred.") (quoting *Zeran*, 1219 F.3d at 330); *Am. Income*, 2012 U.S. Dist. LEXIS 190487, at *11 (same).

Plaintiff's generic allegations that Google "promote[s] and facilitat[es]" the challenged third party content fare no better.  *See* Compl. ¶¶ 13, 15.  First, these are mere legal conclusions, unsupported by any facts, and so the Court may disregard them.  *See Cigna Corp.*, 605 F.3d at 1290.  To the extent these conclusory allegations have any meaning, they seem to refer to little more than Google's use of search algorithms and other standard internet platform tools for arranging how third-party content appears in the Google Play Store.  "Search engine optimization"—a concept which generally involves increasing the quantity of internet traffic to specific internet content—"does not vitiate immunity under Section 230 of the CDA."  *Roca Labs*, 140 F. Supp. 3d at 1321; *Dowbenko*, 582 Fed. App'x at 806 (concluding "the allegation that Google manipulated its search results to *prominently feature* the [allegedly unlawful] article at issue" did not make Google an information content provider for purposes of Section 230) (emphasis added).

15

Finally, to the extent Plaintiff would suggest that Google waives all Section 230 protections by acting as payment processor for in-game virtual coin transactions and collecting a fee for such services (Compl. ¶¶ 3, 6, 7, 13), courts have considered and rejected this specific argument. Facilitating online transactions for a fee does not transform a platform provider into a content developer, or otherwise vitiate Section 230 defenses. "[T]he fact that a website elicits online content for profit is immaterial; the only relevant inquiry is whether the interactive service provider 'creates' or 'develops' that content." *Goddard v. Google, Inc.*, No. C 08-2738 JF (PVT), 2008 U.S. Dist. LEXIS 101890, at *10 (N.D. Cal. Dec. 17, 2008) (citing *Blumenthal v. Drudge*, 992 F. Supp. 44, 52 (D.D.C. 1998)); *see also Hinton v. Amazon.com.DEDC, LLC*, 72 F. Supp. 3d 685, 686, 690 n.9 (S.D. Miss. 2014) (noting that "a website operator's . . . receipt of profits from online sales [does not] control[] the immunity determination under § 230" and dismissing with prejudice state law claims asserted against internet commerce retailer arising from products sold by third parties through its website); *Jurin v. Google, Inc.*, 695 F. Supp. 2d 1117, 1120, 1123 (E.D. Cal. 2010) (finding Google was protected under Section 230 notwithstanding allegation that it generated advertising revenue from service provided to facilitate third-party advertisements). Congress acknowledged that interactive computer services derive revenues through hosting third-party content on their platforms. That is why Section 230 serves not only "'to promote the continued

development of the Internet and other interactive computer services and other interactive media,' 47 U.S.C.. § 230(b)(1)," but also "'to preserve the *vibrant and competitive free market* that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation.' 47 U.S.C.. § 230(b)(2)." *Tanisha Sys. v. Chandra*, No. 1:15-CV-2644-AT, 2015 U.S. Dist. LEXIS 177164, at *20 n.7 (N.D. Ga. Dec. 4, 2015) (emphasis added).

As Plaintiff has failed to allege any facts to suggest why Section 230 does not apply here, her single state law liability claim must be dismissed.

### B.    Plaintiff's Loss Recovery Claim Fails

Separate and apart from Section 230, Plaintiff's Complaint fails to state a claim against Google under Alabama's loss recovery statute, Ala. Code § 8-1-150. The statute reads as follows, in relevant part:

> Any person who has paid any money or delivered any thing of value lost upon any game or wager may recover such money, thing, or its value by an action commenced within six months from the time of such payment or delivery.

The plain language of the statute makes clear that Plaintiff must allege at least four interrelated elements: that she (1) lost, (2) money or a thing of value, (3) upon a game or wager, that was (4) delivered or paid to the defendant. *See Ex parte Pfizer, Inc.*, 746 So. 2d 960, 964 (Ala. 1999) ("When the language of a statute is plain and unambiguous . . . , courts must enforce the statute as written by giving the words of

the statute their ordinary plain meaning -- they must interpret that language to mean exactly what it says and thus give effect to the apparent intent of the Legislature.").

Plaintiff identifies three separate and discrete transactions in an effort to satisfy the statutory requirements: 1) downloading Slotomania for free from the Google Play Store (*see* Compl. ¶ 9); 2) purchasing a specific amount of virtual "coins" for a set amount of money using Google's payment processing service (*id.* ¶ 10); and 3) wagering those virtual coins with the owners of Slotomania for the chance to win more virtual coins (*id.* ¶ 13). All three are inherently insufficient to state a loss recovery claim against Google.

### 1. *Transaction #1: Plaintiff's free download of Slotomania*

Plaintiff accuses Google of selling "illegal gambling machine games . . . in its Google Play Store." *Id.* ¶ 9. But she also concedes that all such "games" at issue in this lawsuit—including Slotomania—are not "sold," but instead are free to download. *Id.* ¶ 7. Plaintiff cannot sustain a loss recovery claim on the basis of downloading a free app, because this activity involves none of the four required statutory elements: there was (1) no loss, (2) no payment of money or delivery of a thing of value, (3) no game or wager, and (4) no delivery of any money or valuable thing to Google. *See* Ala. Code § 8-1-150(a).

       2.       *Transaction #2: Plaintiff's purchase of virtual "coins" from Slotomania through Google's payment processing service*

Plaintiff seeks recovery of "all sums paid through in-app purchases" (Compl. ¶ 33), which she explains is the money she paid to purchase virtual coins. *See id.* ¶ 11. This transaction does not support a loss recovery claim because it did not result in (1) a "los[s]," nor was it (3) made "upon any game or wager." *See* Ala. Code § 8-1-150(a). A wager "is nothing more than a bet, by which two parties agree that a certain sum of money, or other thing shall be paid or delivered to one of them on the happening or not happening of an uncertain event." *Thornhill v. O'Rear*, 108 Ala. 299, 302 (1895) (internal quotations and citations omitted). There was nothing "uncertain" about Plaintiff's purchase of virtual coins, and therefore no "wager" conceivably involving Google: she paid a specific amount of money to receive a specific amount of virtual coins. *See* Compl. ¶ 11. Plaintiff therefore also suffered no loss to Google, but instead received exactly as much virtual currency as was promised. Then, upon receiving the virtual coins, Plaintiff ceased transacting with Google. All *subsequent* activity which Plaintiff alleges to be illegal gambling took place exclusively between her and the developers of Slotomania. She therefore has no legally cognizable claim against Google under the Alabama loss recovery statute.

At least one court has recognized this key temporal and substantive distinction in the course of rejecting an Alabama loss recovery claim asserted against similarly-situated defendants. In *Brown v. Mastercard Int'l, Inc. (In re Mastercard Int'l, Inc.*

*Internet Gambling Litig.*), Nos. 00-MD-1321, 00-MD-1322, 00-0657, 2004 U.S. Dist. LEXIS 3056 (E.D. La. Feb. 18, 2004), the district court dismissed a section 8-1-150 claim against a credit card issuer whom the plaintiff claimed had processed purchases of "credits" that were subsequently used to engage in online gambling. *Id.* at *8.  The court, applying previous rulings in those multidistrict litigation proceedings (as affirmed by the Fifth Circuit), recognized that "the transactions at issue consist of two separate events: (1) plaintiff's transaction with the credit card company, which ended upon the receipt of credit and (2) plaintiff's subsequent online gambling." *Id.* at *7-8.  Just as in this case, the exchange of money for virtual currency was fully completed before the plaintiff engaged in any "subsequent [alleged] online gambling" activity, and so no loss recovery claim could lie against the payment processor involved in that exchange.  *See id.* at *8 (noting that it was a "temporal impossibility for the [credit card] defendants to have completed their transaction with the plaintiff *before he gambled* and . . . then to be prosecuted for collecting the proceeds of a gambling device, which can only take place *after some form of gambling is completed*") (emphasis added).  The court therefore dismissed the plaintiff's Alabama loss recovery claim with prejudice.  As Plaintiff here specifically characterizes Google's role as providing "payment processing services" to Slotomania for purchase of nothing more than virtual "coins" (*see* Compl. ¶ 3),

and as she acknowledges receiving these coins, (*see id.* ¶ 11), her loss recovery claim likewise fails.

   3.   *Transaction #3: Plaintiff's delivery of virtual coins to Slotomania to play virtual slot machine games*

To the extent Plaintiff may argue that her actual loss recovery claim concerns her *subsequent* wager of virtual coins within Slotomania for the "chance to win free coins" (*see id.* ¶ 11), her cause of action against Google fails for a simple reason: she never delivered these virtual coins to *Google*, as the statute requires, but instead to the developers of Slotomania.  This circumstance is dispositive: "a plaintiff must be able to trace h[er] losses *to the pocket of the defendant* who or which *profited from the loss* in order to recover under Alabama Code Section 8-1-150.  *There is no joint and several liability*."  *Wright v. Dep't of Ala. VFW*, Civil Action No. CV-07-S-2071-NE, 2010 U.S. Dist. LEXIS 145397, at *28 (N.D. Ala. Mar. 24, 2010) (emphasis added).  Limiting plaintiffs' recovery from those persons or entities that actually received money or things of value in a gambling transaction serves the statutory purpose "to put the parties *in statu quo* as to all money won or lost." *Motlow v. Johnson*, 145 Ala. 373, 376 (1905).  As the *Motlow* court reasoned:

> The only money lost by the plaintiff that ever went into the defendant Motlow's hands--[*i.e.*] money lost upon the wager--was $ 400 paid to him by Collier. Certainly if $ 400 was all the money won by Motlow, that was the extent of his interest in the bet. It would seem that the object of the statute would be carried out by holding, under the facts of this case, that the plaintiff may recover against Motlow for *the amount received by him of the winnings*, and that to hold that plaintiff may recover of the defendants jointly the whole

> amount lost would be allowing the plaintiff to recover of Motlow money that never was received by him, and such a judgment would not place or leave Motlow *in statu quo*.

*Id.*  Because Plaintiff cannot allege that she delivered any virtual coins to Google upon a "game or wager," she cannot satisfy the fourth statutory requirement, and so the Court must dismiss her Alabama loss recovery claim without leave to amend.[1]

## V.    **Conclusion**

For the foregoing reasons, Plaintiff's sole state law statutory claim against Google is barred by section 230 of the Communications Decency Act.  Moreover, Plaintiff's loss recovery claim is fatally deficient, as she never lost anything to Google upon any game or wager.  Therefore, the Court should dismiss this case without leave to amend.

---

[1] Finally, the allegations in the Complaint about Alabama's various criminal gambling statutes do not change the Court's analysis on this motion.  The sole claim in this case is made under Section 8-1-150 of the Alabama Code only.  Moreover, though the matter is not directly at issue in this motion, Google expressly denies that any of its actions as alleged in the Complaint or otherwise constitutes unlawful gambling.

Respectfully submitted,

/s/ *James P. Pewitt*
Attorney for Defendants


James P. Pewitt
JAMES P. PEWITT, LLC
Two North Twentieth
2 20th Street North, Suite 925
Birmingham, Alabama  35203
Office:  (205) 874-6686
Cell:  (205) 612-1140
jim@jamespewitt.com


Teresa H. Michaud
Bradford K. Newman
Alexander G. Davis
BAKER MCKENZIE
10250 Constellation Blvd, Suite 1850
Los Angeles, California  90067
Office:  (310) 210-4725
teresa.michaud@bakermckenzie.com
bradford.newman@bakermckenzie.com
alexander.davis@bakermckenzie.com

(*pro hac vice* admission to be obtained)

## <u>CERTIFICATE OF SERVICE</u>

I certify to filing on this date the **DEFENDANTS' MOTION TO DISMISS**

with the Clerk of Court using the CM/ECF system which will send email notification

of such filing to all counsel of record.

This 29th day of January 2021.

*/s/ James P. Pewitt*
James P. Pewitt, LLC